UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| SHELLEY M. BIEHLE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) No. 4:14-cv-00084-TWP-TAB ) |
| CAROLYN W. COLVIN Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON
PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I. Introduction**

Plaintiff Shelley M. Biehle asserts two issues on appeal: (1) whether the ALJ properly accounted for Biehle's arm, cardiovascular, and knee limitations in his RFC finding; and (2) whether the ALJ erred in finding Biehle could perform past relevant work and jobs in the national economy. The Court held oral argument on this matter on August 6, 2015. For the reasons set forth below, the Magistrate Judge recommends that Biehle's brief in support of appeal [Filing No. 27] be denied.

**II. Facts and findings**

Biehle applied for disability insurance benefits and a period of disability on February 7, 2012, alleging disability beginning September 13, 1995, through her date of last insured, June 30, 2004. Biehle's claim was denied initially on April 11, 2012, and on reconsideration May 9, 2012. On August 7, 2013, Biehle, who was represented by an attorney, testified at a hearing

1

before the administrative law judge and an impartial vocational expert. On November 18, 2013, the ALJ issued his decision finding Biehle not to be disabled.

The ALJ found at step one, that Biehle had not engaged in substantial gainful activity during the relevant time period; and at step two, that Biehle's severe impairments included reflex sympathetic dystrophy of the extremities (RSD), cervical degenerative disc disease, and mild lumbar spine degenerative disc disease. [Filing No. 20-2, at ECF p. 17.] The ALJ also noted Biehle's non-severe impairments included coronary artery disease and right knee degenerative joint disease. At step three, the ALJ concluded that Biehle did not meet or equal any relevant listing, and at step four, the ALJ found Biehle capable of performing

> Light work . . .except: (1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) occasional use of the upper extremities for overhead reaching; (5) frequent use of the left upper extremity for reaching in all other directions; and (6) limited to performing unskilled, simple, repetitive tasks.

[Filing No. 20-2, at ECF p. 18.] Relying on a VE's testimony, the ALJ found Biehle capable of performing past relevant work as an assembly worker. [Filing No. 20-2, at ECF p. 22.] At step five, the ALJ found Biehle could perform jobs in the national economy as a mail room clerk, bench assembler, routing clerk, and warehouse checker. [Filing No. 20-2, at ECF p. 23.] This decision became final and appealable when the Appeals Council denied Biehle's request for review. This appeal followed.

**III. Discussion**

*A. Standard of Review*

The Court must uphold the ALJ's decision if substantial evidence supports his findings. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). "The substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a

2

conclusion." *Blakes v. Barnhart,* 331 F.3d 565, 568 (7th Cir. 2003). The ALJ is obligated to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding. *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010). If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. *Moore v. Colvin,* 743 F.3d 1118, 1123 (7th Cir. 2014). The ALJ, however, need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to his conclusion. *Pepper v. Colvin,* 712 F.3d 351, 362 (7th Cir. 2013).

   B. *RFC assessment*

Biehle contests the ALJ's RFC finding for two reasons. First, Biehle asserts that the ALJ failed to properly accommodate for her RSD in her upper extremities. Biehle asserts that the medical record demonstrates the she suffered from and continues to suffer from RSD, which limits her ability to work. The ALJ acknowledged that her RSD was a severe impairment and indicated the RSD in her left upper extremity improved after nerve block injections. [Filing No. 20-12, at ECF p. 10.] She received treatment again in 2002 for right upper extremity symptoms that also went into remission. [Filing No. 20-10, at ECF p. 105; Filing No. 20-12, at ECF p. 3-10.] She complained of upper extremity pain again in 2011, but the ALJ noted that "there is no evidence of any right arm symptoms between 2002 and 2011 which would have precluded the claimant from performing basic work activity within the limitations" of the ALJ's RFC. [Filing No. 20-2, at ECF p. 21; Filing No. 20-12, at ECF p. 142.] Indeed, Biehle underwent surgery in 2002 and reported that her arm symptoms were "completely asymptomatic" in October 2002.[1]

---

[1] The focus from 2002 to 2011 was largely on her knee and cardiovascular impairments. At oral argument, Biehle acknowledged that she was not treated at all for RSD between 2002 and 2012

3

[R. 791.] Even so, the ALJ accounted for Biehle's complaints of pain and weakness in her upper right extremity by limiting her to occasional use of her upper extremities for overhead reaching and frequent use of the left upper extremity for reaching in all other directions. [Filing No. 20-2, at ECF p. 18.] While her RSD symptoms returned and appeared to be more limiting, the ALJ provided substantial evidence to support his finding that in 2004 Biehle was capable of performing light work with the limitations set forth for her upper extremities.

Biehle also argues that the ALJ failed to account for Biehle's non-severe impairments, notably her cardiovascular coronary disease and osteoarthritis in the knee.[2] The ALJ acknowledged that Biehle suffered from coronary artery disease and right knee degenerative joint disease; however, the ALJ indicated that Biehle was not treated for these impairments during the period of disability. In fact, Biehle was not treated for her coronary artery disease until 2005 (a year after her date last insured), and her right knee condition was not treated until 2012. [Filing No. 20-10, at ECF p. 80; Filing No. 20-10, at ECF p. 108.] Biehle's records indicate that she did not experience pain in her right knee until November 2011. [Filing No. 20-10, at ECF p. 159.] The ALJ acknowledged Biehle's left knee pain and her arthroscopic surgery in September 2000 from which Biehle recovered well. [Filing No. 20-7, at ECF p. 76-94.] The ALJ properly considered the record before him in determining Biehle's disability benefits from 1995–2004, and he did not err in failing to incorporate evidence of Biehle's cardiovascular and knee impairments in his RFC. Remand is not appropriate on this issue.

---

except for a single reference in her medical chart on June 13, 2007. [Filing No. 20-9, at ECF p. 29.]

[2] Biehle acknowledged at oral argument that this is a secondary argument, and that the most significant issue on appeal is whether the ALJ failed to accommodate for her RSD.

### C. Jobs in the national economy

Biehle next argues that the ALJ's finding that she could perform past relevant work and jobs in the national economy is not supported by substantial evidence as her limitations in her upper extremities and degenerative disc disease would prohibit her from performing the jobs as described in the DOT.  Specifically Biehle takes issue with the fact that the ALJ found her capable of performing work that requires frequent fine motor manipulation with the upper extremities when the evidence shows she would be incapable of performing such duties.  For example, a bench assembler must (according to the DOT) "position parts in specified relationship to each other, using hands, tweezers, or tongs.  Bolts screws, clips, cements, or otherwise fastens parts together by hand or using hand tools or portable powered tools."  [Filing No. 27, at ECF p. 12-13.]  Biehle argues that her upper extremities have been weakened by her RSD, resulting in swelling, hypersensitivity, and an inability to lift or manipulate with her dominate hand.  The Commissioner points out that the ALJ's RFC limited Biehle's arm use to occasional use for overhead reaching and frequent use of her left arm.  Even so, the ALJ's decision to limit overhead reaching and use of Biehle's arm does not account for any fine motor manipulation limitations she might have due to her RSD.

The issue is whether this constitutes an error and, if so, whether remand is appropriate.  On the one hand, there is evidence in the record that Biehle suffered from swelling, hypersensitivity, and color changes in her hand, all of which suggest she was limited in her motor manipulation.  [*See, e.g.,* Filing No. 20-7, at ECF p. 12, 22; Filing No. 20-12, at ECF p. 13.]  On the other hand, Biehle had asymptomatic symptoms in her arm affected by RSD and complete return of motor strength in both her upper extremities and normal reflexes during the period of disability, which suggested she could perform fine motor manipulation.  [Filing No.

5

20-2, at ECF p. 20; Filing No. 20-7, at ECF p. 26; Filing No. 20-10, at ECF p. 105; Filing No. 20-11, at ECF p. 99; Filing No. 20-12, at ECF p. 6, 10.]  Given that there is evidence to support both the Commissioner's and Biehle's positions, the Court defers to the Commissioner as it is not the Court's role on judicial review to reweigh the evidence.  *Elder v. Asture,* 529 F.3d 408, 413 (7th Cir. 2008); *Phillips v. Astrue*, 912 F.Supp. 2d 749, 759 (S.D. Ind. 2012).  The ALJ considered evidence of Biehle's RSD, noting that she had tenderness, bluish coloration in the hands, and compromised strength in her upper extremities.  [Filing No. 20-2, at ECF p. 19.]  However, the ALJ found that her significant improvement during the period of disability supported his finding that she could perform fine motor manipulation.

Moreover, Biehle disagrees with the ALJ's finding that Biehle could perform work as a warehouse checker.  Biehle argues that there is a substantial ambulatory nature anticipated in the warehouse checker position that Biehle would be unable to perform given her cervical degenerative disc disease, lumbar spine degenerative disc disease, and osteoarthritis in her knees.  The ALJ considered evidence that Biehle had left knee pain in September 2000, and underwent left knee arthroscopic and patellar chondroplasty, lateral meniscectomy, and lateral release.  [Filing No. 20-7, at ECF p. 76-78.]  Biehle's subsequent physical therapy showed objectively that she demonstrated progress, though she did not report subjective improvement.  [Filing No. 20-7, at ECF p. 82.]  The ALJ acknowledged Biehle's 2002 cervical fusion surgery and noted her lumbar had comparatively mild changes with no evidence of nerve root compression or other neurological involvement from 2002 to 2011.[3]  [Filing No. 20-2, at ECF p. 21; Filing No. 20-9,

---

[3]  There is little objective medical evidence related to her cervical and lumbar degenerative disc diseases during the period of disability.  The evidence that is available shows she experienced pain and underwent surgery.  However, the status of her symptoms after her cervical fusion are not prevalent in the record and only reemerge in 2011.  [Filing No. 20-9, at ECF p. 73.]

at ECF p. 64.]  The ALJ concluded that Biehle's daily activities suggested she was more functionally capable than her allegations suggested as she was capable of a lot of yard work, including push mowing, and used a gazelle machine for 45 minutes, five times a week by April 2004.  [Filing No. 20-2, at ECF p. 21; Filing No. 20-8, at ECF p. 74.]  The ALJ considered substantial evidence in the record in finding that Biehle could perform light work and created a logical bridge from the evidence to his conclusion.  Moreover, even if the ALJ erred in finding that Biehle could perform work as a warehouse checker because she was unable to perform the ambulation the position required, the ALJ found other jobs in the national economy Biehle could perform that did not require such ambulation.  Thus, remand on this issue is not appropriate.

**IV.  Conclusion**

For these reasons, the Magistrate Judge finds that the Commissioner's decision should be affirmed and Biehle's brief in support of appeal [Filing No. 27] should be denied.  Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1).  Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date:  8/11/2015

_____
Tim A. Baker
U.S. Magistrate Judge
Southern District of Indiana


Distribution to all counsel of record via CM/ECF.